UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELAINE MARGREAT ROSALIA,<br><br>Plaintiff,<br><br>v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security,<br><br>Defendant. | No. 2:15-cv-0184-CKD<br><br><br><br>ORDER |

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying applications for Disability Income Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act ("Act"), respectively. For the reasons discussed below, the court will deny plaintiff's motion for summary judgment and grant the Commissioner's cross-motion for summary judgment.

I.   BACKGROUND

Plaintiff, born October 31, 1956, applied on November 18, 2011 for DIB and on November 23, 2011 for SSI, alleging disability beginning March 15, 2008. Administrative Transcript ("AT") 10, 18, 172-88. Plaintiff alleged she was unable to work due to depression, anxiety, lower back pain, rheumatoid arthritis in both hands, bilateral carpal tunnel syndrome, and degenerative disc disease and arthritis in her lumbar spine. AT 217. In a decision dated July 29,

1

2013, the ALJ determined that plaintiff was not disabled.[1]  AT 10-20.  The ALJ made the following findings (citations to 20 C.F.R. omitted):

> 1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2013.
>
> 2. The claimant has not engaged in substantial gainful activity since March 15, 2008, the alleged onset date.
>
> 3. The claimant has the following severe impairments: carpal tunnel syndrome, degenerative disc disease of the lumbar spine, major depressive disorder, panic disorder with agoraphobia, posttraumatic stress disorder, bipolar disorder, and borderline personality traits.
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of

---

[1]  Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. § 401 *et seq.*  Supplemental Security Income is paid to disabled persons with low income. 42 U.S.C. § 1382 *et seq.*  Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ." 42 U.S.C. §§ 423(d)(1)(a), 1382c(a)(3)(A).  A parallel five-step sequential evaluation governs eligibility for benefits under both programs. See 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920, 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-142 (1987).  The following summarizes the sequential evaluation:

> Step one:  Is the claimant engaging in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two.
>
> Step two:  Does the claimant have a "severe" impairment? If so, proceed to step three.  If not, then a finding of not disabled is appropriate.
>
> Step three:  Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1?  If so, the claimant is automatically determined disabled.  If not, proceed to step four.
>
> Step four:  Is the claimant capable of performing his past work?  If so, the claimant is not disabled.  If not, proceed to step five.
>
> Step five:  Does the claimant have the residual functional capacity to perform any other work?  If so, the claimant is not disabled.  If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process.  Bowen, 482 U.S. at 146 n.5.  The Commissioner bears the burden if the sequential evaluation process proceeds to step five.  Id.

2

>the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.
>
>5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) except: she could lift, carry, push, and/or pull 50 pounds and 25 pounds frequently; she could stand and/or walk for 6 hours in an 8-hour workday; she does not require the use of a hand-held assistive device; she could sit without restriction; she could frequently handle and finger bilaterally; and she could perform simple, unskilled work.
>
>6. The claimant is unable to perform any past relevant work.
>
>7. The claimant was born on October 31, 1956 and was 51 years old, which is defined as an individual closely approaching advanced age, on the alleged disability onset date. The claimant subsequently changed age category to advanced age.
>
>8. The claimant has at least a high school education and is able to communicate in English.
>
>9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills.
>
>10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.
>
>11. The claimant has not been under a disability, as defined in the Social Security Act, from March 15, 2008, through the date of this decision.

AT 12-20.

## II. ISSUES PRESENTED

Plaintiff argues that the ALJ committed the following errors in finding plaintiff not disabled: (1) improperly determined that the opinion of consultative psychologist Dr. Patty that plaintiff had social interaction difficulties was entitled to "little weight" when determining plaintiff's residual functional capacity ("RFC"); (2) improperly relied on the Medical Vocational Guidelines at 20 C.F.R. Part 404, Subpart P, Appendix 2 (the "Grids") to find plaintiff not disabled at step five; and (3) failed to provide clear and convincing reasons for finding plaintiff's testimony less than fully credible.

/////

III.     LEGAL STANDARDS

The court reviews the Commissioner's decision to determine whether (1) it is based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in the record as a whole supports it. Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is more than a mere scintilla, but less than a preponderance. Connett v. Barnhart, 340 F.3d 871, 873 (9th Cir. 2003) (citation omitted). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007) (quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005)). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted). "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008).

The record as a whole must be considered, Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986), and both the evidence that supports and the evidence that detracts from the ALJ's conclusion weighed. See Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). The court may not affirm the ALJ's decision simply by isolating a specific quantum of supporting evidence. Id.; see also Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a finding of either disability or nondisability, the finding of the ALJ is conclusive, see Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987), and may be set aside only if an improper legal standard was applied in weighing the evidence. See Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

IV.     ANALYSIS

  A.     The ALJ did not err in Considering the Medical Evidence

First, plaintiff argues that the ALJ erred by giving "little weight" to the opinion of Dr. Patty, a consultative examining psychologist, that plaintiff had "moderate" social interaction difficulties without providing sufficient reasons for doing so.[2]

---

[2] The ALJ also gave "little weight" to the opinions of non-examining physicians Dr. Kang and Dr. Tashjian that plaintiff had "moderate" difficulties with social interaction for the same reasons

The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995). Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual. Id.; Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996).

To evaluate whether an ALJ properly rejected a medical opinion, in addition to considering its source, the court considers whether (1) contradictory opinions are in the record, and (2) clinical findings support the opinions. An ALJ may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons. Lester, 81 F.3d at 831. In contrast, a contradicted opinion of a treating or examining professional may be rejected for "specific and legitimate" reasons that are supported by substantial evidence. Id. at 830. While a treating professional's opinion generally is accorded superior weight, if it is contradicted by a supported examining professional's opinion (e.g., supported by different independent clinical findings), the ALJ may resolve the conflict. Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995) (citing Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989)). In any event, the ALJ need not give weight to conclusory opinions supported by minimal clinical findings. Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir.1999) (treating physician's conclusory, minimally supported opinion rejected); see also Magallanes, 881 F.2d at 751. The opinion of a non-examining professional, without other evidence, is insufficient to reject the opinion of a treating or examining professional. Lester, 81 F.3d at 831.

/////

/////

---

he expressed with regard to the similar opinion provided by Dr. Patty. AT 17. In her motion for summary judgment, plaintiff's arguments regarding the ALJ's consideration of the medical evidence primarily addresses only the ALJ's treatment of Dr. Patty's opinion and only obliquely addresses the ALJ's consideration of the opinions of Dr. Kang and Dr. Tashjian. See ECF No. 14 at 10-17. Nevertheless, because the ALJ addressed the concurring opinions of Dr. Kang and Dr. Tashjian in the exact same manner he addressed Dr. Patty's opinion, the court's discussion below with regard to Dr. Patty's opinion is equally applicable to the ALJ's consideration of the opinions of Dr. Kang and Dr. Tashjian.

1        Here, Dr. Patty performed a comprehensive psychological examination of plaintiff on
2 February 24, 2012 and opined, *inter alia*, that plaintiff had "moderate restrictions" in her ability
3 to do detailed and complex instructions; relate and interact with coworkers and the public;
4 maintain concentration and attention, persistence, and pace; associate with day-to-day work
5 activity, including attendance and safety; and maintain regular attendance in the workplace and
6 perform work activities on a consistent basis. AT 326-31. She opined that plaintiff had "no
7 restrictions" with regard to all other aspects of mental functioning. AT 330-31. The ALJ
8 generally gave Dr. Patty's opinion "significant weight" because it was largely consistent with
9 plaintiff's treatment records demonstrating that plaintiff 's psychiatric conditions were well
10 controlled. AT 17. However, he determined that Dr. Patty's opinion that plaintiff had
11 "moderate" social interaction difficulties was entitled to only "little weight" because: "Dr. Patty
12 observed no attitude or behavioral issues upon mental status examination and the claimant has not
13 sought any dedicated counseling to address any social interaction issues." Id.

14        Plaintiff contends that these were insufficient reasons to discount this particular aspect of
15 Dr. Patty's opinion. Particularly, plaintiff asserts that Dr. Patty's own mental examination notes
16 in the record actually support the "moderate" social interaction limitations opined by Dr. Patty,
17 rather than detract from them as the ALJ reasoned. Plaintiff points to Dr. Patty's notes that
18 plaintiff exhibited a restricted affect, reported feeling useless, and was tearful during the
19 examination to support her argument. However, specifically with regard to plaintiff's "social
20 history," Dr. Patty noted that plaintiff "got along fairly well with people at work," was "liv[ing]
21 with a friend," and had "fair" relationships with her family and friends" despite indications that
22 plaintiff tried to avoid them at times. AT 329-30. These examination findings provided the ALJ
23 with substantial evidence to properly support his determination that Dr. Patty's opinion that
24 plaintiff had "moderate" limitations regarding social interaction was entitled to reduced weight
25 because it conflicted with Dr. Patty's own examination findings. See Tommasetti v. Astrue, 533
26 F.3d 1035, 1041 (9th Cir. 2008) (holding that incongruities between a treating physician's
27 objective medical findings and that physician's opinion constitute specific and legitimate reasons
28 for the ALJ to reject that physician's opinion concerning the claimant's functional limitations);

Rollins, 261 F.3d at 856 (holding that the ALJ properly discounted a treating physician's functional recommendations that "were so extreme as to be implausible and were not supported by any findings made by any doctor," including the treating physician's own findings).

Similarly, the ALJ also properly determined that Dr. Patty's opinion regarding social interaction was entitled to lesser weight because it conflicted with the lack of evidence in the record showing that plaintiff had sought counseling in order to address social interaction issues. Indeed, Dr. Patty herself noted that plaintiff "has not received any psychiatric treatment." AT 327. Plaintiff speculatively argues that she could have been seeking psychiatric treatment from her primary care physician and that the ALJ's failure to inquire into this possibility during the administrative hearing precludes him from using plaintiff's apparent lack of psychiatric treatment as a reason for discounting Dr. Patty's opinion. However, the record simply provides no support for such theorizing. Plaintiff carries the burden of proof in establishing the existence of such an arrangement, see Bowen, 482 U.S. at 146 n.5, and the record reflects that she has failed to do so here.

Moreover, even had the ALJ erred in discounting Dr. Patty's opinion concerning plaintiff's social restrictions, it would have been harmless error under the circumstances presented in this case. See Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012) ("we may not reverse an ALJ's decision on account of an error that is harmless"). As noted above, Dr. Patty opined that plaintiff had, at worst, "moderate" limitations with regard to social functioning. AT 331. The Ninth Circuit Court of Appeals has held that moderate mental limitations are not sufficiently severe so as to require vocational expert testimony. Hoopai v. Astrue, 499 F.3d 1071, 1077 (9th Cir. 2007) (involving an assessment that the claimant was moderately limited in "his ability to maintain attention and concentration for extended periods; his ability to perform activities within a schedule, maintain regular attendance, and be punctual with customary tolerance; and his ability to complete a normal workday and workweek without interruption from psychologically-based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods."); see also Martin v. Astrue, 2013 WL 552932, at *8-*9 (E.D. Cal. Feb. 13, 2013) (had the ALJ erred by failing to adopt or give greater weight to a consultative examining psychiatrist's

opinion that the plaintiff had "moderate social functioning limitations," such error would have been harmless). Accordingly, even had the ALJ fully adopted Dr. Patty's opinion regarding this "moderate" mental limitation, the ALJ still could have relied on the Grids in the manner that he did to determine that plaintiff was not disabled. Therefore, even had the ALJ improperly discounted the opinion of Dr. Patty, such error would have been harmless.

    B. <u>The ALJ did not err in Relying on the Grids to Determine that Plaintiff was not Disabled</u>

Next, plaintiff argues that the ALJ erred in relying on the Grids to determine that plaintiff was not disabled at step five of the analysis. In particular, she argues that the ALJ's determination that plaintiff's RFC limited her to "simple, unskilled work" and frequent bilateral handling and fingering precluded the ALJ from solely utilizing the Grids to determine that plaintiff was not disabled because these non-exertional limitations were sufficiently severe so as to significantly limit the range of work permitted by the plaintiff's exertional limitation to medium work. For the reasons discussed below, this argument is without merit.

The Grids take administrative notice of the numbers of unskilled jobs that exist throughout the national economy at various functional levels. 20 C.F.R. Part 404, Subpart P, Appendix 2, § 200.00(b). An ALJ may resort to the Grids at step five of the sequential analysis to determine whether there exists unskilled work within the national economy for which the claimant is capable of performing. "The ALJ can use the [G]rids without vocational expert testimony when a non-exertional limitation is alleged because the [G]rids provide for the evaluation of claimants asserting both exertional and non-exertional limitations. But the [G]rids are inapplicable when a claimant's non-exertional limitations are sufficiently severe so as to significantly limit the range of work permitted by the claimant's exertional limitations." <u>Hoopai</u>, 499 F.3d at 1075 (citations and quotation marks omitted). In such instances, the testimony of a vocational expert is required. <u>Id.</u>

Here, plaintiff's assertion that her limitation to "simple, unskilled work" precluded the ALJ from relying exclusively on the Grids is frivolous. The Grids specifically take into account limitations to unskilled work and the Ninth Circuit Court of Appeals has determined that the more

severe restriction to "nonpublic, simple, repetitive work" does not constitute a non-exertional limitation sufficient to prevent an ALJ from relying solely on the Grids. Angulo v. Colvin, 577 F. App'x 686, 687 (9th Cir. 2014) (holding that the plaintiff's "restriction to nonpublic, simple, repetitive work" did not preclude the ALJ from only using the Grids to determine that the plaintiff was not disabled); see also 20 C.F.R. pt. 404, subpt. P, app. 2.

Similarly, plaintiff's assertion that her non-exertional limitation to frequent bilateral handling and fingering precluded the ALJ from exclusively relying on the Grids at step five is without merit. With regard to fingering limitations, Social Security Ruling ("SSR")[3] 85-15 notes that the "loss of fine manual dexterity narrows the sedentary and light ranges of work much more than it does the medium, heavy, and very heavy ranges of work." 1985 WL 56857. It also notes with regard to handling impairments that "[v]arying degrees of limitations would have different effects, and the assistance of a [vocational specialist] may be needed to determine the effects of the limitations." Id. The ALJ here properly determined that plaintiff generally had the ability to perform work at a "medium" exertional level. AT 15. He further determined that plaintiff was limited to "frequent" fingering and handling activities, thus indicating that she was only minimally limited in these abilities. Given plaintiff's RFC to perform "medium work" and the minor degree of limitation in her abilities to finger and handle, the court concludes that these limitations are not so severe so as to significantly limit the range of work plaintiff could have performed. Accordingly, the ALJ was not required to obtain the testimony of a vocational expert and did not err in relying on the Grids to find plaintiff not disabled at step five.

C. The ALJ did not err in Finding Plaintiff Less Than Fully Credible

Lastly, plaintiff argues that the ALJ erred by determining that plaintiff's testimony regarding the intensity, persistence, and limiting effects of her symptoms was not entirely credible. This argument is not well taken.

---

[3] Social Security Rulings "represent precedent final opinions and orders and statements of policy and interpretations that we have adopted." 20 C.F.R. § 402.35(b)(1). Social Security Rulings are "binding on all components of the Social Security Administration." Heckler v. Edwards, 465 U.S. 870, 873 n.3 (1984); cf. Silveira v. Apfel, 204 F.3d 1257, 1260 (9th Cir. 2000) ("This court defer[s] to Social Security Rulings ... unless they are plainly erroneous or inconsistent with the Act or regulations").

The ALJ determines whether a disability applicant is credible, and the court defers to the ALJ's discretion if the ALJ used the proper process and provided proper reasons. See, e.g., Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1995). If credibility is critical, the ALJ must make an explicit credibility finding. Albalos v. Sullivan, 907 F.2d 871, 873-74 (9th Cir. 1990); Rashad v. Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990) (requiring explicit credibility finding to be supported by "a specific, cogent reason for the disbelief").

In evaluating whether subjective complaints are credible, the ALJ should first consider objective medical evidence and then consider other factors. Bunnell v. Sullivan, 947 F.2d 341, 344 (9th Cir. 1991) (en banc). If there is objective medical evidence of an impairment, the ALJ then may consider the nature of the symptoms alleged, including aggravating factors, medication, treatment and functional restrictions. See id. at 345-47. The ALJ also may consider: (1) the applicant's reputation for truthfulness, prior inconsistent statements or other inconsistent testimony, (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment, and (3) the applicant's daily activities. Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996); see generally SSR 96-7P, 61 FR 34483-01; SSR 95-5P, 60 FR 55406-01; SSR 88-13. Work records, physician and third party testimony about nature, severity and effect of symptoms, and inconsistencies between testimony and conduct also may be relevant. Light v. Social Security Administration, 119 F.3d 789, 792 (9th Cir. 1997). A failure to seek treatment for an allegedly debilitating medical problem may be a valid consideration by the ALJ in determining whether the alleged associated pain is not a significant non-exertional impairment. See Flaten v. Secretary of HHS, 44 F.3d 1453, 1464 (9th Cir. 1995). The ALJ may rely, in part, on his or her own observations, see Quang Van Han v. Bowen, 882 F.2d 1453, 1458 (9th Cir. 1989), which cannot substitute for medical diagnosis. Marcia v. Sullivan, 900 F.2d 172, 177 n.6 (9th Cir. 1990). "Without affirmative evidence showing that the claimant is malingering, the Commissioner's reasons for rejecting the claimant's testimony must be clear and convincing." Morgan v. Commissioner of Social Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999).

/////

/////

Here, the ALJ provided the following reasons in support of his adverse credibility determination:

> First, the claimant['s] . . . . allegations are inconsistent with clinical indications that show that her condition is well controlled. For example, physical examinations of the back, wrists, and knees have often revealed few significant findings except for some tenderness and some decreased range of motion about the spine and wrists. The record documents no specialized care. Consistent with medium exertional-type work, the claimant reported that she performed a house cleaning job on March 14, 2011. As recently as March 23, 2013, claimant reported that she was performing yard work. By April 30, 2013, the claimant reported that she engages in a "[v]igorous activity level" and that she exercises "daily."
>
> When the claimant presented to emergency care on March 23, 2012 with complaints of back pain, physical examination again revealed few significant findings and radiographs revealed "[m]ild" to "[m]inimal" findings with only moderate narrowing at the L3-4 level. In fact, the claimant was discharged in a "[s]table" condition with a recommendation to merely avoid heavy lifting.
>
> The claimant's psychiatric condition similarly appears well controlled. The claimant has conservatively treated at primary care rather than counseling or therapy. Progress notes show few significant mental status examination findings. In fact, the claimant's most serious complaints have occurred during periods of active alcohol abuse. When the claimant was hospitalized in August 2009 and April 2013, she was noted to have engaged in alcohol abuse. When sober, the claimant reported "feeling better" with improved sleep and that she "feels good about being alcohol free but admits it is difficult to stay sober."
>
> Second, the claimant['s] . . . allegations are inconsistent with medical opinions that show that she has a considerable ability to work despite her impairments. Consultative physician Kristof Siciarz, M.D., examined the claimant on February 24, 2012, and opined that even with her impairments, she could lift, carry, push, and/or pull 50 pounds and 25 pounds frequently; she could stand and/or walk for 6 hours in an 8-hour workday; she does not require the use of a hand-held assistive device; she could sit without restriction; and she could perform manipulations without limitation.
>
> . . .
>
> The claimant's allegations are partially supported by her use of prescription medication; her use of assistive devices such as a cane, wrist braces, and a back brace; her previous requirement for carpal tunnel surgery; radiographic findings of spinal degeneration. The claimant has been placed on two psychiatric holds with suicidal ideation, wherein her global assessment of functioning score reached as low as 30.

11

> However, the weight of the evidence shows that while the claimant may experience some level of pain and psychiatric symptoms, it is so well controlled such that she could nonetheless perform a wide range of unskilled medium exertional work.

AT 17 (citations to the record omitted).  These constituted clear and convincing reasons for discounting plaintiff's testimony that were supported by substantial evidence from the record.

First, the ALJ determined that the evidence in the record that plaintiff's impairments were generally well controlled and that plaintiff's treatment for those impairments was relatively conservative undermined her complaints of disabling symptoms.  This was a proper consideration.  See Tommasetti v. Astrue, 533 F.3d 1035, 1039-40 (9th Cir. 2008) (reasoning that a favorable response to conservative treatment undermines complaints of disabling symptoms); Parra v. Astrue, 481 F.3d 742, 751 (9th Cir. 2007) ("We have previously indicated that evidence of conservative treatment is sufficient to discount a claimant's testimony regarding severity of an impairment"); Fair v. Bowen, 885 F.2d 597, 604 (9th Cir. 1989); Warre v. Comm'r of Soc. Sec. Admin., 439 F.3d 1001, 1006 (9th Cir. 2006) (a condition that can be controlled or corrected by medication is not disabling for purposes of determining eligibility for benefits under the Act).  It was also supported by substantial evidence in the record.  Plaintiff's treatment records generally show that the only forms of treatment she received with regard to her complaints of back pain were pain medications and routine medical checkups.  See e.g., AT 289-290, 314, 318, 335-40, 403, 423, 426, 445.  Similarly, while the record does show that plaintiff was briefly hospitalized twice, once in 2009 and once in 2013, for attempting suicide, it also shows that these were short-lived acute episodes brought on by traumatic events and plaintiff's use of alcohol, that plaintiff's mental state was largely stable throughout the relevant period, and that plaintiff received only treatment in the form of medication for her mental impairments.  E.g., AT 326-31, 409, 437-40.  This evidence constituted substantial evidence in support of the ALJ's reasoning that plaintiff's conservative treatment and relative stability of her impairments undermined her credibility with regard to her allegations that her impairments rendered her totally disabled.

/////

Next, the ALJ determined that plaintiff's reported activities indicated that her impairments caused her far fewer limitations than she alleged. This too was a proper reason for discounting plaintiff's testimony that was supported by substantial evidence. "While a claimant need not vegetate in a dark room in order to be eligible for benefits, the ALJ may discredit a claimant's testimony when the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting . . . Even where those activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment." Molina, 674 F.3d at 1112-13 (citations and quotation marks omitted); see also Burch, 400 F.3d at 680 (ALJ properly considered claimant's ability to care for her own needs, cook, clean, shop, interact with her nephew and boyfriend, and manage her finances and those of her nephew in the credibility analysis); Morgan v. Comm'r of Soc. Sec., 169 F.3d 595, 600 (9th Cir. 1999) (ALJ's determination regarding claimant's ability to "fix meals, do laundry, work in the yard, and occasionally care for his friend's child" was a specific finding sufficient to discredit the claimant's credibility). Here, the record indicates that plaintiff engaged in activities such as mowing her lawn and working as a house cleaner for houses her brother built, which entailed labor such as cleaning windows. AT 48-49, 287, 408, 439, 444. These activities directly conflicted with plaintiff's allegations that her impairments precluded her from all work. Accordingly, substantial evidence supported the ALJ's determination that plaintiff's activities undermined the credibility of her subjective complaints.

Finally, the ALJ also determined that plaintiff's testimony regarding the extent of her impairments conflicted with the medical evidence in the record. Although lack of medical evidence cannot form the sole basis for discounting plaintiff's subjective symptom testimony, it is nevertheless a relevant factor for the ALJ to consider. Burch, 400 F.3d at 681. Substantial evidence supported the ALJ's determination that the medical findings and opinions of plaintiff's physicians indicated that plaintiff's impairments caused symptoms less severe than those plaintiff alleged. Indeed, plaintiff's examining physicians opined that neither her physical nor her mental impairments caused functional limitations that would have prevented plaintiff from working. AT 319-31 (physical and mental examinations opining only mild to moderate physical and mental

limitations with regard to basic workplace functions).  Furthermore, plaintiff's treating notes in the record show that plaintiff had only mild-to-moderate symptoms with regard to her back impairments.  E.g., AT 291, 309, 425, 430.  These medical records indicate that the symptoms of plaintiff's impairments were less severe than what plaintiff claimed through her testimony.  The ALJ properly relied on this reasoning as an additional factor for finding plaintiff's testimony less than fully credible.

In sum, the ALJ provided multiple clear and convincing reasons for finding plaintiff's testimony regarding the extent of her impairments less than fully credible, all of which were supported by substantial evidence from the record.  Accordingly, the ALJ did not err in making his adverse credibility determination.

V.   CONCLUSION

For the reasons stated herein, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (ECF No. 14) is denied;

2. The Commissioner's cross-motion for summary judgment (ECF No. 21) is granted; and

3. Judgment is entered for the Commissioner.

Dated:  January 4, 2016

_____
CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

11 rosalia0184.ss